The first case this morning is Aspex Eyewear v. Concepts In Optics. Mr. Blinder? Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Aspex, the athlete in this case, according to the brilliant genius scheme and method in the local court, as outlined in my brief, Your Honor. What they did, what happened, is they had an adverse claim construction in another district court case. Involving the same patent for different claims. And? After receiving that adverse decision. Why was it adverse? It was adverse, Your Honor, because it resulted in the summary judgment of non-infringement of the patent. At least I can think of when they appealed it, so I guess they thought it was adverse as well. But while that appeal was pending, they came back to our magistrate judge and they asked him, they requested him to adopt the very same claim construction that they had appealed to this court. So they asked him to adopt it. Then they said, well, on top of all, why don't we do an add-on claim construction? Why don't we add some components to the claim? And therefore you can find that the patent is infringed by my client's accused product. And that's exactly what the district court judge did, the magistrate judge. The reason why they did that is because they went either way, at least according to their claim. Because if this court would have affirmed an ever-adverse claim construction, they could have gone back to our judge or even come before this court and said, that's okay, we still have the add-on claim construction and you can find infringement under that. But if, like what happened, this court vacated that, now they come back and say, it doesn't really matter anyway, it's all new. It's not erroneous, it's not correct, but it's new. Which I've indicated in my brief, it just doesn't exist. I haven't found any case that deals with newness. Now, that kind of strategy, Your Honor, that I think is perhaps acceptable in the business world, where you hedge funds, where you can hedge your bet, you can do commodities and options, that's not the case with the judiciary. It's well established that under doctrines of judicial estoppel, by an error, waiver, and the like, that that type of behavior is prohibited. And as laid out in my brief, this court has admonished other attorneys, certainly not to this level, but other attorneys cautioning them. When they adopted the claim construction, they were somewhat under compulsion to adopt. And now, they have a correct claim construction, why can't they return to the position they had maintained at the outset? Oh, you're right. In other words, a court had intervened and had spoken. Why weren't they? Well, within their rights to recognize that action. And then when that also had a different course, why couldn't they return to their original? First of all, Your Honor, they requested, in other words, it was through their actions, in other words, this case didn't come out of the blue, and they adopted saying, well, look at what the court of appeals has done. They advocated a certain position before this court adopted, and then they used that same thing, that same decision that they advocated. Okay, well, what's the proper construction now here? The proper construction, Your Honor, is to keep that construction that involves the length of the arm that all the seven parties in this case adopted, requested. We adopted it, we requested it, and we based our basis of finding a non-infringement on that. Let's keep it. And do away with the construction. Well, you objected to the construction below the issue. I only objected to one part of it. Did you think it proper to accept the other court's adoption? Absolutely, Your Honor. So you've been struggling? Absolutely. For the same reason that the court adopted, they found non-infringement in that case. And I think, maybe they won't, but I think the aspect of it. You were advocating that also. Yes, we were, Your Honor, because I think, you know, I can readily admit, we don't infringe with that claim construction. Now, when you add on these components. Well, this is the court found that you did. The court found we did only, Your Honor, because the court had that additional claim construction, which said, if you add components on top of this, Your Honor, i.e., the flange. Well, it seems to me that, you know, there wasn't this bad faith that you're talking about. So our problem right now is to get the right claim construction and the right infringement decision. Your Honor, I honestly do think and believe that litigants just can't do what they did. And we can go into why I don't believe the claim construction may be. Litigants have to respond to courts. When courts have spoken, they have to adjust. When courts speak again, they have to adjust. If courts speak in different tones, they have to acknowledge all those tones, don't they? They do, Your Honor, and I would say that this case would be totally different if it were not for aspects coming before that court on another case. If it was another party, and that's why I say, isn't it coincidental that throughout their brief, they failed to tell you the full name of the case? I mean, why? Sixty pages in an opinion, and you don't mention that there? I don't find any bad faith in any actions that they're taking. So maybe you can proceed with just why you think there's some error in what's occurred. Yes, Your Honor. Well, for us to survive, there were ten elements that the judge added to the claims. Here's what I don't understand, counsel. You're complaining that the judge added elements to the claim, many of which I don't see anywhere in his opinion. But apart from that, you're complaining that he added elements. Well, if you add elements to a claim, that narrows the claim, right, not broadens it. So if he found you infringed under a broad claim, why are you appealing to us complaining that he added limitations, which would only narrow the claim, and you'd still infringe? And so it doesn't make sense. We can't change the outcome under those circumstances. You're going to get an affirmance on infringement if all you get us to successfully do is narrow the claims and you've infringed the broader ones. I'll tell you why I disagree with you on that. We don't have a linchpin. He put a linchpin in Claims 1 and 17. We don't have one. He put a nose bridge into Claims 1 and 17. We don't have one. He put mountain cows into the claims. That's all fair. I can show you where the... Where is the absence of the nose bridge? You want to come back and tell us it doesn't even work because it doesn't have a nose bridge. I know it doesn't. Which would be fair to make that it doesn't. But where is the nose bridge in the patent? It's in the picture. You can see it plainly in every one of the figures. And you see the specification discussing at length that the entire frame of the glasses is included in the term primary spectacle frame. Your Honor, the picture showed item 10. I'm looking at figures 1 and 2. I knew that that was going to be the confusion. The picture shows 10 going down to just the part of the frame that circles the lens. Correct. But that 10 is then described, the primary spectacle frame is described in the specification as including the nose bridge and all the other aspects of the primary spectacle frame. Why can't one of skill in the art read the specification and understand perfectly well that they haven't limited themselves to the parts of the frame that surround the lens? There's no testimony whatsoever, Your Honor, that there's no nose bridge. No testimony is necessary. The specification includes it. It's not meant to. It's 33 through 48. You've read those. And you know that it includes that. So why wouldn't one of skill in the art perfectly well understand that the primary spectacle frame encompasses a nose bridge? Well, Your Honor, the judge found a nose bridge in the primary spectacle frame. Then why didn't he find one in the auxiliary spectacle frame? He didn't. They say he did. On page 6 of their brief, they talk about how it's in there, but the judge did not find one in there. So now we have one frame that has a nose bridge and one frame that does not. The same place, column 2, line 33, says that the auxiliary spectacle frame includes two magnetic members such that the auxiliary spectacle frame may be stably supported on the primary spectacle frame. Now, of course, that presupposes a nose bridge. It would have to have one to be supported on the primary spectacle frame with only the magnets as the other supporting points. One of skill in the art wouldn't even need to think much about that. Then, Your Honor, why would that have to be included as an element in the claims? Why would the judge have to put that in there? Because if it's not in there, it doesn't work. And no readily-admitted doesn't work. But one of ordinary skill in the art wouldn't know. I mean, it's clearly enabled from the pictures. And the word primary spectacle frame, in the claim they use, including and comprising, which are open transitions. That means other things can also be included, and it doesn't mean that the claim can't be infringed. Well, then perhaps I can move on to an easier portion here. Components. Components attached to the arm. Components of the arms. That is not in the case. Your Honor, I'm just reminding you. Yes, Your Honor. Thank you very much. Mr. Dima. Yes, Your Honor. Good morning. May it please the court. Consistently throughout the Newark case, in this case, we've taken a consistent position on what the term arm means. In the Miracle Court, and in the court below, we said the ordinary meaning of the word arm applies. And that ordinary meaning is not to dispute parties' agreement on things. The Miracle Court decided to read the negative limitation into the word arms, that it can't extend past the prerequisite projection, okay? Obviously we appealed that, and obviously this court agreed with us. In the Florida District Court, from which this appeal arises, we also always said the ordinary meaning applies. But we said, but, District Court Judge, if you're going to adopt the Miracle decision, it should be narrowly construed to mean that, although the arm can't extend past, things attached to the arm can. The judge said, you're right. So what Concepts is saying, because that claim construction from the Florida court said components attached to the arm can extend past the projections, he's reading all sorts of words into this claim. He's not, because he's not construing the word arm. He's not changing any meaning of the word arm. It's the ordinary meaning. He's just saying things attached to the arm can extend past the projections. It's as simple as that. As to the lens rings, Your Honor's point out here. Your ten should have not had little arrows going to the two lens rings, right? Well, what happens is any patent draftsman knows that they use the reference numeral one or ten to mean the whole structure. Suffice it to say. But you probably should have had your ten floating somewhere above the whole structure rather than designated as going around just the lens ring. In a perfect world? Yes, Your Honor. And there is also language in claim one that tells you that there has to be some supporting structure for the lenses. It says the primary spectacle frame for supporting primary lenses therein. That denotes a supporting structure. The preferred embodiment in the patent is lens rings. It could be half a ring. It could be just pieces attached to the lenses themselves without a ring. I agree with what you're saying, more counsel about lens rings. But one question I have is how did the district court come to the conclusion that the claims include lens rings if they're included as optional and always includes nose bridges? That's the part that caused me confusion. If provided. Right. It's because, as I just said, some glasses, not mine but maybe Your Honor's eyesight isn't that good, are rimless, meaning they're attached to the lenses here but they don't have all of this. But do any of your pictures show rimless glasses? No, but the claim says for supporting lenses therein. It's not limited to lens rings. It's any structure which supports the lenses between them. And you have to have a nose bridge or else the glasses aren't going to stay together. That's what I was saying in the district court. And concepts has interpreted that to mean that I'm conceding the patent's invalid. What I was saying was concepts claim construction is that primary spectacle frame only includes lens rings. And I said that doesn't make any sense because without the nose bridge you're going to have things floating in the air. My point to the district court was their construction didn't make any sense. And it certainly was not supported by the specification. As to this miracle decision, I have to say this because I saw it in the reply brief about half a dozen times, that I somehow was trying to delude this court. I've been before this court at least a half a dozen times in the last year and a half. I'm trying to delude this court because I short-sighted the case. I just said miracle. If I attach the entire decision to the appendix, if I was trying to hide something from you, I wouldn't have attached it to the appendix. But even if we reverse on claim construction what the district court did and adopt what our court did in the previous decision, it doesn't change the outcome. That's right. It doesn't. There's still going to be infringement under either case. That's exactly right. I'm confused in general because none of the claim construction arguments, as I understood them, that were raised by the appellate, would change the outcome in this case because in all of them his complaint is the district court unnecessarily narrowed the claims by reading limitations in. You're exactly right. Even if he did that, which I'm not sure he did, but even if he did that, if we take those claims out, we'd have broadened the claims. Well, if you infringed a narrow claim, you'd certainly infringe a broader one. So I'm confused about the appeal. I know it's his argument, not yours, but do you have any light you could shed on it for me? I wish I could, Your Honor. I've been confused by things in this case for the last six years. I've said very clearly in our briefs whether you adopt Judge Duvay's construction or whether this court, under its powers of de novo review, decides to adopt this court's decision in Miracle, there's infringement either way. The Miracle decision of this court just makes the claims broader. Right. End of story. The outcome is not complicated. The defendant's reasoning and strategy for being here probably is because if you're confused and maybe Your Honors are confused, I'm certainly confused. Do you think this was a frivolous appeal, counsel? Yes, I do. I do. And I've been practicing law 20 years, and I don't say these things lightly. And yes, I do. I'm looking you right in the face, and I'm saying it is a frivolous appeal. Last point, this reading mounting collars into the frames, he didn't. If you look at the court's claim construction, it speaks for itself. He doesn't use the word mounting collars. The portion of his order that they're relying on is the infringement decision. He's taking the properly construed claim and applying them to their device, which has mounting collars. That's what he was doing. Last point, as to your auxiliary spectacle frame, he said, why didn't they include the nose-bridging mat? That wasn't one of the elements we were construing. Does Your Honors see in the court's claim construction order auxiliary spectacle frame as one of the disputed elements? It was never construed. So in sum, if it pleases the court, either way, if you adopt Judge DuBase's claim construction of arms, if you adopt your own decision in Mericle, there's little infringement of Claim 1 and 17, either way. Thank you. Thank you, Mr. DeVito. Just a reminder that you have four and a half minutes. Thank you, Your Honor. I think the point of whether we infringe or not, because of the claim construction, Your Honors, we're containing also, which I have not discussed yet, that the extension is not part of the primary spectacle frame. And I'm going to go on in a brief as to why that is the case. In our device, which I don't believe the court ever looked at, to be quite frank with you, I think they looked at the 730 pattern, which is another argument I have as to whether or not that was done properly. I really don't think there was an acute. And I'll say that with a straight face. There was no analysis of the accused device. Certainly not in his opinion. What he did is look at the 730 pattern and came up with a conclusion based upon that. But our projection is attached to the extension in the accused device, and even in the 730 pattern. Take a look at Claim 1. Claim 1 has the extension separate from the primary spectacle frame. For that reason, we don't infringe. Our arm also doesn't extend over and engage with the other side portion of the primary spectacle frame. With respect to Claim 17, our magnetic member is not secured to the rear side, as indicated in Claim 17. And we don't have an arm extending from the front side over to the top side. There are several other reasons. But I think the demonstration that counsel put up here and talked about with respect to his eyewear is exactly what he did in front of the court. In other words, here's a potentially accused device. And because of that, why don't we add a lens rim if provided? Notice in my brief, I said provided where? And there never is in the claim, in the accused device. For all these reasons, Your Honor, unless the court has any other questions, I would request that the district court opinion be vacated, reversed, in accordance with my brief. And thank you very much. Our next case is McClain v. OPM.